Chancellor Eesaussure.
Two very distinct questions occur in this case: — The 1st is outlie construction of the will of the late Mr. Ed. Wilkinson. The 2nd is as to the validity of the marriage -settlement of the late Mr. William Clement. The words of the devise which are to be construed are as follows: “I devise my plantation at Willtown, called the Island River Plantation, to my brother-in-law Wm. Clement. There are no words of inheritance or of perpetuity in. this devise. The representatives of Mr. Wm. Clement claim the property as a devise in fee: — This is -denied'by the complainants. The circuit court was of opinion, and so,decreed, that the decided cases in this court had settled doctrine that words of inheritance or of perpetuity were not necessary in last wills and testaments, and that therefore Mr. Clement took a fee under this devise. I have considered this case, and agree in opinion with the circuit court, that the decisions heretofore made have settled this doctrine. I allude to the cases of Whaley and Jenkins, 3 Eq. Rep. 80; Clark and Mikel, 3 Eg. Rep. 168, Waring and Middleton, 3 Eq. Rep. 249. It seems scarcely necessary after those cases to examine-the subject further. But 1 will add a few words.
It is well known that many of the judges in England have regretted the rigor of the rule which required words of inheritance or perpetuity to give a fee in devises of real estate. — For it is notorious that the rule tended to defeat the intention of the testator in nine cases out of ten at least. But the anxious desire of the law and the courts to watch over the interest of the heir-at-law introduced another rule, that the heir-at-law was never to be disinherited but by express words or plain and necessary implication. That rule produced a perpetual struggle-between the two principles, the duty of giving effect to the wills of testators, and the desire to favor the heir-at-law, the main support of the landed Aristocracy. Since the abolitiotf *84 of the rights of primogeniture, which flowed naturally and necessarily from the nature of our government, we have no such contending principles existing in our system. Equality of rights is equity, politically as well as morally. It is the duty of the court to endeavor in the construction of wills to ascertain the intention of the testator,, and to give, effect to that intention, without regard to technical phraseology. In the case before us, the words of the will gave the land unqualifiedly to Mr. Clement, and I have no doubt that the testator intended to give a fee simple. I have no doubt, because in all such cases the testator would limit the estate for life or years, if he so untended. He makes no further disposition of the property¿ as. he would have done if he had not meant to give a fee. Believing then that be meant to give a fee, I feel bound to give effect to that intent, notwithstanding the absence of words of inheritance or perpetuity. And the decided cases warrant our giving effect to that intention.
We come next to consider the question of the effect of the postnuptial settlement made by Mr. Wm. Clement of his property. He acquired the land under the will of his brother-in-law! the slaves on Ms marriage with his wife; and lie fiad little or no other property. He made a marriage settlement subsequent to his marriage, including all the property so acquired. He appears to have been in debt at the time of the execution of the said instrument. These debts were however small, and very far short of the value of the property settled. It is contended for the complainants that the settlement is void: and that the property should be subjected to the payment of all Mr. Clement’s debts. It must be remembered here that tho’ Mr. Clement died deeply in debt, there are no creditors before the court seeking relief against the settlement, except the complainants, who are legatees of Mr. Edward Wilkinson. He devised certain tracts of land to be sold, and the proceeds to be divided among these nephews and nieces. It appears that Mr. Clement, who qualified as executor on the will, sold these lands and received and spent the proceeds, and has died insolvent; so *85 shat they will lose their legacies, unless the settled property be subjected to the payment*
It is doubtless true that a voluntary settlement, made after marriage, cannot be sustained against prior creditors. They must be paid out of the property so settled. And it is equally true that when a man settles all his property after marriage, and soon after contracts large debts, so as to manifest that the object of the party was to cover his property, and then to incur debts without the means of paying them, the instrument will be void. For this raises a vehement presumption of fraud, and the settlement will not be supported. The circumstances of this case, if they do not actually warrant the conclusion of a fraudulent intent, operate as a legal fraud. The property in question •came to Mr. Clement wholly from his wife and her brother, and he was under a moral obligation to make a provision for his wife and her children, provided he did no injustice to others. His debts were not contracted immediately after the settlement, but gradually and in the lapse of years; and Mr. Clement’s failure arose partly from losses on friendly indorsements. I am unwilling therefore, under these circumstances, to say that the marriage settlement was made expressly with a view to deceive or defraud general and subsequent creditors; and with respect to ordinary debts contracted after the settlement, I am inclined io think that they would not be allowed to defeat the settlement, which was regularly recorded.
But it does appear to me that the facts of this cause make a very strong case for relief to these complainants, which may be given in perfect conformity to the principles above stated. The testator, Mr. Edward Wilkinson, after devising the tract of land at Willtown, called the island River Swamp Plantation, to Mr. William Clement, devised three oilier tracts of land to be sold by his executors, on the best terms they could obtain, most conducive to the ínteres* 'of those concerned; and then directed the monies arising from the sale of the said three tracts of land to be equally divided, share and share alike, among his (the-testator’s) nephews and nieces, the issue of his sisters who were born at the time of making the-will, or might *86 be born within four months from the date of the will; with right of survivorship, in case of the death of any of the said nephews and nieces, unmarried or without making a will. Mr. Clement was named an executor, and accepted the devise to himself. He also qualified on the will as an executor, and under, took the trust committed to the executors, to sell the other lands for the benefit of the testator’s nephews and nieces. In fact he alone afterwards acted in the sale of the lands, and received the money in trust for them. This money it is admitted he has spent, and is dead insolvent; so that the nephews and nieces can receive nothing, unless protected from the operation of this post-nuptial settlement. On the maturest deliberation I think they are entitled to that protection. Why are post-nuptial settlements constantly declared void as to antecedent debts? Certainly not because those debts have any liens on the property comprehended in the settlement; for such settlements are declared void as to antecedent debts, whether secured by mortgages or judgments or whether owing on bonds or notes not yet due. They are avoided then because of the pre-existing engagements of the husband, at the time he makes the post-nuptial settlement; and because of the moral as well as legal obligation to comply with those engagements, before he puts his property out of the way of making them good. Now I consider the acceptance by Mr. Clement of the trust under the will of Mr. Wilkinson for the benefit of the nephews and nieces, and his holding the property under said trust, as an existing engagement at the time of executing the post-nuptial settlement, which he was bound to fulfil. He has not done so. He sold theland, received the money, spent it and left no estate to pay the nephews and nieces, except that comprehended in the post-nuptial settle-tlement. I do not think ho had any more right to cover his property by a post-nuptial settlement against this trust, then existing and the propertj' in his hands, than he had to protect it by such an instrument against any other pre-existing engagement, such as a bond or note. The conclusion then is, that the post-nuptial settlement is void against the claims of the com. plainants.
*87 It is therefore ordered and decreed that the decree of the circuit court he affirmed as to the devise, and reversed as to the marriage settlement, and that it h'e referred to the commissioner to examine and report what sales of the lands devised to be sold for the benefit of the nephews and nieces, were made by Mr. Clement, and for what sums of money: and that the property com, prehended in the post-nuptial settlement be held liable to the payment of the sums which may be found due; and also that the commissioner do enquire into and report what nephews and nieces or their representatives are in existence, to receive and share the amount so due.
Chancellors Thompson and James concurred.